UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIET BUI and CHRISTINA AVALOS-REYES, individually and on behalf of all other similarly situated employees, and on behalf of the general public,<br><br>Plaintiffs,<br><br>v.<br><br>SPRINT CORPORATION, a SPRINT COMMUNICATIONS COMPANY, L.P., a Delaware Corporation; SPRINT/UNITED MANAGEMENT CO., a Delaware Corporation; and DOES 1 through 20, inclusive,<br><br>Defendants. | No. 2:14-cv-02461-TLN-AC<br><br>**ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFYING THE SETTLEMENT CLASS, AND PROVIDING FOR NOTICE TO THE SETTLEMENT CLASS** |

This matter is before the Court on Plaintiffs Viet Bui and Christina Avalos-Reyes' ("Plaintiffs") Motion for Preliminary Approval of Class Action Settlement. (ECF No. 39.) Defendants Sprint Corporation, Sprint Communications Company, L.P., and Sprint/United Management Co. ("Defendants" or "Sprint") do not oppose Plaintiffs' Motion. (ECF No. 47.) The Court has carefully considered the arguments raised in Plaintiffs' Motion. For the reasons set forth below, the Court **GRANTS** Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs bring this class action lawsuit on behalf of eleven subclasses of telecommunications workers who were or are employed by Sprint.[1] (Second Am. Class Action Compl., ECF No. 46 at ¶1.)  Sprint is a United States telecommunications holding company that provides wireless service, operates retail stores in California, and is also a major global Internet carrier. (Mem. P. & A. Mot. Prelim. Approval of Class Action Settlement, ECF No. 40 at 8.)

On July 10, 2014, Plaintiff Viet Bui filed his Complaint in Sacramento County Superior Court against Defendants for alleged violations of the California Labor Code.  (ECF No. 40 at 8.)  On September 4, 2014, Plaintiff Viet Bui filed a First Amended Complaint.  (ECF No. 40 at 8.)  On October 17, 2014, Sprint removed the case to this Court.  (ECF No. 1.)  Pursuant to a Stipulation filed with the Court on May 18, 2015 (ECF No. 44), Plaintiff Viet Bui's request to file a second amended complaint was approved by the Court on May 26, 2015.  (ECF No. 45.)  Plaintiffs filed their Second Amended Complaint, adding Plaintiff Christina Avalos-Reyes, on May 28, 2015.  (ECF No. 46.)

In the Second Amended Complaint, Plaintiffs allege that Defendants: (1) failed to provide meal periods in violation of California Labor Code §§ 226.7 and 512, and the California Code of Regulations; (2) failed to provide rest periods in violation of Labor Code §§ 226.7 and 512, *et. seq.*, and the California Code of Regulations; (3) failed to pay wages and related overtime compensation in violation of California Labor Code §§ 1194 and 1198; (4) underpaid overtime wages in violation of Labor Code §§ 510, 1194 and 1198, and Industrial Welfare Commission

---

[1] On January 29, 2015, the Court received a Motion from Proposed Intervenors Olivia Guilbaud, Marques Lilly, Michael Wong, and Michael Smith ("*Guilbaud* Plaintiffs and Proposed Intervenors") regarding two cases against Sprint witch they argue have "substantially similar claims" proceeding before the Honorable Vince Chhabria of the United States District Court, Northern District of California (*Guilbaud, et al. v. Sprint Nextel Corporation, et al.*, Case No. 3:13-CV-04357-VC and *Smith, et al. v. Sprint/United Management Company*, Case No. 3:14-CV-02642-VC). (ECF No. 15.) On June 4, 2015, *Guilbaud* Plaintiffs and Proposed Intervenors filed a renewed motion to Intervene. (ECF No. 48.) On June 19, 2015, the Court denied *Guilbaud* Plaintiffs and Proposed Intervenors Motions to Intervene. (ECF No. 54.) Nevertheless, on December 16, 2015, the *Guilbaud* Plaintiffs and Proposed Intervenors withdrew their Renewed Motion to Intervene. (ECF No. 58.) The *Guilbaud* Plaintiffs and Proposed Intervenors withdrew their opposition in light of a settlement agreement executed and filed in the consolidated matters of lead case *Guilbaud, et al. v. Sprint Nextel Corporation, et al.*, Case No. 3:13-CV-04357-VC. (ECF No. 58 at 3.)  Given this Court's denial of the *Guilbaud* Plaintiffs and Proposed Intervenors Motions, the approved settlement of the *Guilbaud* Plaintiffs and Proposed Intervenors action in the Northern District of California, and the Joint Stipulation of Settlement in this action which excludes the "plaintiff or [anyone] who has filed a consent to join in the collective action conditionally certified in the *Guilbaud* Matter" (ECF No. 40-1 at 9), this Court sees no conflict and approves this Class Action and Proposed Settlement for the group of Plaintiffs named in the Second Amended Complaint.

(IWC) Wage Order § 3; (5) failed to provide reimbursement for business expenses in violation of California Labor Code §§ 2802 and 406-407; (6) violated Labor Code §2698 *et. seq.*; (7) failed to pay wages due and payable twice monthly in violation of California Labor Code § 204; (8) failed to pay all wages due upon ending employment in violation of Labor Code §§ 201-203; and (9) engaged in unlawful competition and unlawful business practices in violation of California Business and Professions Code §§ 17200 *et. seq.*  (*See* ECF No. 46.)  Plaintiffs request penalties pursuant to the Private Attorney General Act of 2004 (PAGA) under Labor Code §§ 2699 *et. seq.*  (*See* ECF No. 46.)  Defendants deny all of Plaintiffs' allegations.  (ECF No. 40 at 29–30.)

On December 17, 2014, the Court stayed the case to allow the Parties to participate in an early mediation.  (ECF No. 12.)  In preparation for that mediation, the Parties thoroughly investigated Plaintiffs' wage and hour claims and debated the merits and strength of each Party's case.  (ECF No. 40 at 9.)  The Parties exchanged discovery, reviewed and analyzed documents and records of class members, and retained experts to calculate damages.  (ECF No. 40 at 9.)  On March 9, 2014, the Parties attended mediation with an experienced and well-respected mediator, the Honorable Edward A. Infante (Ret.).  (ECF No. 40 at 10.)  With Judge Infante's assistance the Parties were able to reach an agreement on the terms of a settlement.  (ECF No. 40 at 10.)

The Parties have agreed to settle the above-entitled action on a class-wide basis.  (Notice of Settlement, ECF No. 33.)  Plaintiffs filed a Motion for Preliminary Approval of Class Action Settlement on May 18, 2015.  (ECF No. 39.)  The specific terms of the Settlement Agreement are set forth in a duly executed Joint Stipulation of Settlement.  (ECF No. 40-1.)  Defendants filed a Statement of Non-Opposition to Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.  (ECF No. 47.)  Plaintiffs' Motion requests that this Court order the following: (1) grant preliminary approval of the Proposed Class Action Settlement; (2) grant leave to file a Second Amended Complaint[2]; (3) approve Rust Consulting, Inc. as Claims Administrator; (4) approve the Notice to the Settlement Class and authorize sending of the Notice to Class Members; (5) grant provisional certification of the Settlement Class for settlement purposes only; (6)

---

[2] Pursuant to a Stipulation filed with the Court on May 18, 2015, (ECF No. 44), Plaintiffs' request to file a second amended complaint was approved by the Court on May 26, 2015.  (ECF No. 45.)  Plaintiffs filed their Second Amended Complaint, adding Plaintiff Christina Avalos-Reyes, on May 28, 2015.  (ECF No. 46.)

confirm Plaintiffs' counsel as Class Counsel and preliminarily approve of their fees and costs; (7) approve Plaintiffs Viet Bui and Christina Avalos-Reyes as the Class Representatives; and (8) schedule a Final Fairness Hearing for final approval of the settlement. (ECF No. 40 at 7.) For the reasons set forth below, the motion is GRANTED.

## II.    SUMMARY OF THE SETTLEMENT

In Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, Plaintiffs explain that Defendants shall pay a sum equal to $4,850,000.00 (the "Gross Settlement Amount") into a *non-reversionary* settlement fund for settlement payments to the Class Members, administration of the settlement, Enhancement Awards to the Class Representatives, Court-approved attorney's fees and costs, and the PAGA penalty. (ECF No. 40 at 10–11.) The expected "Net Settlement Amount" is estimated to be $3,159,745.00.[3] (ECF No. 40 at 10.)

All Settlement Class Members[4] who do not timely opt-out of the Settlement ("Participating Class Members") will automatically receive their share of the settlement proceeds without the need to return a Claim Form. (ECF No. 40 at 10.) Each Participating Class Member who does not opt-out will receive a share based on the number of weeks he or she worked in a Covered Position during the liability period. (ECF No. 40 at 10.) After the Date of Finality, actual Individual Settlement Payments to Participating Class Members will be calculated by multiplying each Participating Class Member's number of Compensable Workweeks by the quotient of the Net Settlement Amount divided by the Total Compensable Workweeks. (ECF No. 40-1 at 20.) Each Individual Settlement Payment made to a Participating Class Member shall be deemed to be comprised of wages, penalties, and interest payments in equal, one-third (⅓) parts

---

[3] The Net Settlement Amount of $3,159,745.00 is calculated as the Maximum Settlement Amount ($4,850,000.00) - Cost of administration of the settlement (estimated not to exceed $30,000.00) – Enhancement Awards of $15,000.00 for Class Representative Viet Bui and $5,000.00 for Class Representative Christina Avalos-Reyes ($20,000.00) – Attorneys' fees ($1,616,505.00) – Attorney's Costs ($20,000.00) – PAGA penalties ($5,000.00) (but $1,250 (25%) of the PAGA payment will remain in the Net Settlement Amount for distribution to Participating Class Members. (ECF No. 40 at 10–11.)

[4] The "Settlement Class" means all persons who are or who have been employed by Sprint as a non-exempt employee in one of Sprint's California retail stores during the Class Period as a Store Host, Retail Consultant, Bilingual Retail Consultant, Lead Retail Consultant, Bilingual Lead Retail Consultant, Assistant Store Manager, Bilingual Assistant Store Manager, and/or Manager Retail Store (C), except for any person who is a named plaintiff or who has filed a consent to join in the collective action conditionally certified in the *Guilbaud* Matter. (ECF No. 40-1 at 9.) All other undefined capitalized terms used herein have the same meaning ascribed to them in the Parties' Joint Stipulation and Settlement Agreement (ECF No. 40-1).

(i.e., ⅓ wages, ⅓ penalties and ⅓ interest payments). (ECF No. 40-1 at 20.)

The Class Period will close on the date of Preliminary Approval. (ECF No. 40 at 11.) If 15% or more of all Eligible Class Members submit a timely and valid request to "opt out" of (i.e., request exclusion from) the Settlement, Sprint has the right to terminate the Proposed Settlement. (ECF No. 40 at 11.) If the total number of Compensable Workweeks is more than 15% greater than the amount disclosed by Sprint at the Parties' March 9, 2015 mediation, the Gross Settlement Amount shall increase in proportion to the difference between the number of Disclosed Workweeks and the actual total of Compensable Workweeks. (ECF No. 40 at 12.)

At the time of final approval, Class Representative Plaintiff Viet Bui will request that the Court approve an enhancement of $15,000.00 and Class Representative Christina Avalos-Reyes will request that the Court approve an enhancement of $5,000.00. (ECF No. 40 at 11.) Furthermore, at the time of final approval, the law firms Quintilone & Associates, The Carter Law Firm, and The Phelps Law Group, including the attorneys Richard E. Quintilone II, Roger Carter, and Marc H. Phelps ("Class Counsel") will request attorneys' fees in the amount of $1,616,505.00 and costs incurred, not to exceed $20,000.00. (ECF No. 40 at 11; ECF No 40-1 at 5.) An estimated payment not to exceed $30,000 will be made from the Gross Settlement Amount for reasonable administrative costs. (ECF No. 40 at 11.) Payment of $5,000 will be made from the Gross Settlement Amount for settlement of PAGA claims.[5]

### III.   APPROVAL PROCESS

A settlement of class litigation must be reviewed and approved by the court. Fed. R. Civ. P. 23(e). This approval process is done in three stages:

> First, the parties present a proposed settlement to the court for so-called "preliminary approval." If a class has not yet been certified, typically the parties will simultaneously ask the court to "conditionally" certify a settlement class.
>
> Second, if the court does preliminarily approve the settlement (and conditionally certify the class), notice is sent to the class describing the terms of the proposed settlement, class members are given an opportunity to object or, in Rule 23(b)(3) class actions, to opt out of the settlement, and the court holds a fairness hearing at

---

[5] Pursuant to California Labor Code Section 2699(i), the PAGA Penalty shall be allocated as follows: $3,750 (75%) to the LWDA and $1,250 (25%) will remain in the Net Settlement Amount for distribution to Participating Class Members. (ECF No. 40 at 11.)

which class members may appear and support or object to the settlement.

Third, taking account of all of the information learned during that process, the court decides whether or not to give "final approval" to the settlement. As the parties may also have moved for class certification at this point in the litigation, final approval can also encompass a decision certifying the class.

Newberg on Class Actions, § 13:10 (5th ed. 2014).  During the preliminary evaluation the court is to examine the submitted materials and determine whether the proposed settlement terms seem fair. *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 212 (5th Cir. 1981).  Some courts will hold a preliminary approval hearing, while others do not. *Custom Led, LLC v. eBay, Inc.*, 2013 WL 4552789, *1 (N.D. Cal. 2013).  Given the parties' briefings and the absence of objection, the Court finds the motion is suitable for determination without a preliminary hearing.

## IV.  PROVISIONAL CLASS CERTIFICATION

In their motion, Plaintiffs request that the Court certify the class for settlement purposes. (ECF No. 40 at  7.)  Federal Rule of Civil Procedure ("FRCP") 23(c)(1) permits a court to "make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 466 (E.D. Pa. 2000) (citing *Collier v. Montgomery County Housing Authority,* 192 F.R.D. 176, 181 (E.D. Pa. 2000)).  In order to make such a determination, the prerequisites of FRCP 23(a) and (b) must first be satisfied.

A. <u>FRCP 23(a) Requirements</u>

The four requirements of FRCP Rule 23(a) are:

(a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

The Court will address each prerequisite individually.

     i. *FRCP 23(a)(1) Numerosity*

The numerosity requirement is satisfied if the class is so large that joinder of all members

would be impracticable. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Although the numerosity requirement does not focus exclusively on the number of members in the potential class, case law does suggest that very large numbers may be considered impracticable.[6]

Here, the Settlement Class is defined as: "all persons who are or who have been employed by Sprint as a non-exempt employee in one of Sprint's California retail stores during the Class Period as a Store Host, Retail Consultant, Bilingual Retail Consultant, Lead Retail Consultant, Bilingual Lead Retail Consultant, Assistant Store Manager, Bilingual Assistant Store Manager, and/or Manager Retail Store (C), except for any person who is a named plaintiff or who has filed a consent to join in the collective action conditionally certified in the *Guilbaud* Matter." (ECF No. 40-1 at 9.) There are approximately 5,021 Eligible Class Members. (ECF No. 40 at 14.) The joinder of approximately 5,021 individuals would overburden the Court's docket and be impracticable. Therefore, the numerosity requirement is satisfied.

        ii.    *FRCP 23(a)(2) Commonality*

The second prerequisite for class certification is that there must be a common question of law or fact to the class. Fed. R. Civ. P. 23(a)(2). The class members must share a "common contention of such a nature that it is capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011). The commonality requirement is generally satisfied where "the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *LaDuke v. Nelson,* 762 F.2d 1318, 1332 (9th Cir. 1985) (citing *Armstrong v. Davis*, 275 F.3d 849, 884 (9th Cir. 2001)). Furthermore, commonality is met where class members "have suffered the same injury." *See Wal-Mart Stores, Inc.*, 131 S.Ct. at 2551.

In the Complaint, Plaintiffs contend that Defendants violated various Labor Code

---

[6] The courts provide no strict number, but when a class is very large joinder is typically impracticable. *See Gen. Tel. Co. of the N.W. v. EEOC,* 446 U.S. 318, 330 (1980) (suggesting 15 is too few); *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 357 (3d Cir. 2013) (presuming numerosity at 40); *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (same).

sections and Business and Professions Code sections by failing to provide meal and rest periods, failing to pay wages and overtime, failing to timely pay wages, failing to reimburse for business expenses, and failing to pay all wages due upon ending employment. (ECF No. 46.) These alleged practices and policies apply class-wide. Furthermore, the Plaintiffs allege that the conduct at issue here injured all class members in the exact same way. Thus, the commonality requirement is met.

        iii.    *FRCP 23(a)(3) Typicality*

The typicality prerequisite of FRCP 23(a) is fulfilled if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Representative claims "are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

Here the Class Representatives, as fellow Sprint telecommunications workers, allegedly endured the same exposure to Defendants' conduct and experienced the same consequences. The Representative Plaintiffs share the same claims and the "same interest" as the Class Members, as well as suffered the "same injury." *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 156 (1982). Therefore, the typicality requirement is met.

        iv.    *FRCP 23(a)(4) Adequacy*

The final prerequisite under FRCP 23(a) is that the representative parties must be able to fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). To make this determination, the Ninth Circuit proposed two questions for a court to ask: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

Here, Plaintiffs maintain that there is no conflict of interest, and furthermore, the Court is unaware of any evidence that would suggest otherwise. Plaintiffs essentially have the same claim as the Class Members they represent. Additionally, there is no evidence that the Representative Plaintiffs and their counsel will not prosecute the action vigorously. There is evidence that Plaintiffs' counsel is competent given their substantial experience in prosecuting

complex litigation and class action lawsuits. (Quintilone Decl., ECF No. 41; Carter Decl., ECF No. 21; Phelps Decl., ECF No. 42.) Therefore, the final prerequisite of FRCP 23(a) is met.

B.  FRCP 23(b) Requirements

In addition to meeting all the four prerequisites of 23(a), a class action must also meet one of the three requirements of FRCP 23(b). *Blake v. Arnett*, 663 F.2d 906, 912 (1981). Plaintiffs seek class certification pursuant to FRCP 23(b)(3) which states:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

  i.  *Predominance of Common Questions*

The Rule 23(b)(3) predominance test assesses whether proposed classes are "sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). A court should look to the common questions because "when common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.

Here, each Class Member was allegedly subjected to the same failure to pay wages, failure to provide meal and rest periods, and other such conduct by Defendants. Plaintiffs are claiming a common practice and conduct by Defendant. Therefore, the common question here is whether Defendants did in fact violate the various Labor Code sections and Business and Professions Code sections, as Plaintiffs allege. Accordingly, the common questions that the class members share here are a significant aspect of the case and can be resolved in a single adjudication. As such, the first requirement of Rule 23(b)(3) is met.

  ii.  *Superiority of Class Action*

Resolution of the claims of approximately 5,021 Class Members in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. Therefore, this requirement of FRCP 23(b)(3) is satisfied.

## V. PRELIMINARY APPROVAL OF SETTLEMENT

FRCP 23(e) provides that "[a] class action shall not be dismissed or compromised without the approval of the court . . . " Fed. R. Civ. P. 23(e)(2003). The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness." 4 Newberg § 11.26. In reviewing a settlement, it is not a court's province to "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute. . . ." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992). Instead a court should weigh the following factors: the strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the stage of the proceedings, and the value of the settlement offer. *Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 301 (E.D. Cal. 2011). Given that some of these factors cannot be fully assessed until the court conducts the final approval hearing, "a full fairness analysis is unnecessary at this stage." *See Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 324 (N.D. Cal. 2013) (citing *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008)).

Preliminary approval of a settlement and notice to the proposed class is appropriate: "[i]f [1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval. . . ." *Collins*, 274 F.R.D. at 301–02 (citing *In re Tableware Antitrust Litig.,* 484 F.Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

A. <u>The Settlement was the Product of Informed, Arm's Length Negotiations</u>

The settlement here was reached after the Parties engaged in extensive and probing discovery, negotiations on substantive issues, reviewed and analyzed documents and records of class members, and obtained additional data and information to calculate damages. (ECF No. 40 at 19.) In addition, the Parties consulted with experts and participated in full-day mediation with a retired judge. (ECF No. 40 at 9.) As a result, the Parties likely had sufficient information to make an informed decision about the terms of the Settlement. Therefore, for purposes of preliminary approval, the Court is satisfied that the Settlement was the product of informed and

arm's length negotiations.

### B.  The Proposed Settlement Has No "Obvious Deficiencies"

The Settlement provides for a Gross Settlement Amount of $4,850,000.00 which consists of payments to the Class Members, administration of the Settlement, payment of Enhancement Awards to the two Class Representatives, attorney's fees and costs, and PAGA penalties.  The amount remaining after deducting the attorney fees and costs, claims administration costs, Class Representative Enhancement Awards, and PAGA penalties will be the Net Settlement Amount (estimated to be $3,159,745.00).  (ECF No. 40 at 10.)  The Claims Administrator will then divide this amount between the Participating Class Members by multiplying each Participating Class Member's number of Compensable Workweeks by the quotient of the Net Settlement Amount divided by the Total Compensable Workweeks.  (ECF No. 40-1 at 20.)  All Settlement Class Members who do not timely opt-out of the settlement will automatically receive their shares of the settlement proceeds without the need to return a Claim Form.  (ECF No. 40 at 10.)  The Court finds no obvious deficiencies in the proposed method of apportioning the award to the Class Members.

Furthermore, the Court finds no obvious deficiencies with the Class Representative Enhancement Awards of $15,000 for Plaintiff Viet Bui and $5,000 for Plaintiff Christina Avalos-Reyes for acting as the Class Representatives.  Federal courts have awarded enhancement payments to lead plaintiffs for their efforts in prosecuting the case.  *See, e.g.*, *Miller v. CEVA Logistics USA, Inc.*, 2015 WL 729638, at *6 (E.D. Cal. Feb. 18, 2015) (approving $15,000 enhancement award for $2.6 million settlement).  The enhancement awards in this case seem fair and not the result of improper self-interest.

The Court also finds no obvious deficiencies with the Class Counsel attorney's fees.  The Ninth Circuit has deemed "20% to 33.33 % of the total settlement value [to be reasonable], with 25% considered the benchmark."  *Morgret v. Applus Technologies, Inc.*, No. 1:13-cv-01801-JLT, 2015 WL 1012576, at *9 (E.D. Cal. Mar. 5, 2015) (citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)).  While the Class Counsel attorney's fees of 33.33% of the Gross Settlement Amount ($1,616,505.00) are on the high side, given the number of potential Class Members

involved in this case, the expertise of Class Counsel and the number of firms involved, the fees seem appropriate. Furthermore, the fees are subject to court approval, and at the final approval hearing the party seeking fees bears the burden of establishing that the fees and costs were reasonably necessary to achieve the results obtained. *Fischer v. SJB–P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000).

### C. The Settlement does not improperly grant preferential treatment to class representatives or segments of the class

There is nothing to suggest that the Settlement improperly grants preferential treatment to Class Representatives or segments of the Class.  As explained above, the amount remaining, after attorney's fees, costs, enhancement awards, and PAGA penalties are deducted, will be divided among the Class Members automatically based on the number of Compensable Workweeks they worked.  If there are 5,000 Participating Class Members, then the average individual payment each will receive is approximately $632.00.  (ECF No. 40 at 25.)  The Court agrees with Plaintiffs that "[t]hese are real and substantial payments as opposed to the largely speculative awards that may or may not be otherwise obtained based on the various hazards of litigation should the Proposed Settlement not be approved." (ECF No. 40 at 25.)

As for the Enhancement Awards, they also appear to be appropriate.  Enhancement Awards are common in class actions and are intended to compensate class representatives for their time and efforts.  *See, e.g.*, *Miller*, 2015 WL 729638 at *6.  Therefore, this is not preferential treatment of the Class Representatives, but rather providing them an award for performing a civic duty.

### D. The Settlement Falls Well Within the Range of Possible Approval

In order to determine whether a settlement falls well within the range of possible approval, a court must focus on "substantive fairness and adequacy" and "consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Collins*, 274 F.R.D. at 302 (citing *In re Tableware*, 484 F. Supp. 2d at 1080.

Plaintiffs have informed the Court that Defendants provided Plaintiffs with records to assess Defendants' exposure, including:

>more than 280 pages of Sprint's policies relating to Plaintiff's claims in the Action; a list of all of Sprint's California retail stores (including the hours of operation of each store and the date on which each California retail store opened and closed); employment data for a representative sample of the Settlement Class (including current and former job titles, hire dates, termination dates, and job location); and thousands of pages of payroll and timekeeping data (including timekeeping audit data) for a representative sample of the Settlement Class.

(ECF No. 40-1 at 11.) Upon receipt and review of these records, Plaintiffs "believe that the claims alleged by Plaintiff[s] in the Action have merit." (ECF No. 40-1 at 12.) Defendants believe the claims asserted in the Action are without merit." (ECF No. 40-1 at 12.) The Parties "understand and agree that this Settlement represents a compromise of highly disputed claims, and have entered into this Agreement to avoid the risks, costs, and delays associated with further proceedings." (ECF No. 40-1 at 12–13.) "Plaintiff and Class Counsel believe that the Settlement reached confers substantial benefits upon Plaintiff[s] and the Eligible Class Members and that the settlement embodied in this Agreement is fair, reasonable, adequate, in accordance with the law, and in the best interests of Plaintiff[s] and the Eligible Class Members." (ECF No. 40-1 at 12.)

If further litigation were to occur here, both Parties would face significant risks. The Parties would be required to expend considerable time and resources which would potentially outweigh any additional recovery Plaintiffs may receive or any potential minimized costs for Defendants that could result from successful litigation. In light of this uncertainty, the Proposed Settlement is fair, reasonable and adequate, and is in the best interest of the Class Members in light of the facts and circumstances provided.

### VI.   APPROVAL OF NOTICE PROGRAM

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. "When the parties reach a settlement agreement before a class determination and seek to stipulate that the settlement will have class-wide scope, a class notice must be sent to provide absent class members with certain basic information so that they have an opportunity to consider the terms of the settlement." *See* Newberg on Class Actions (4th Ed.

2002) §11.30.

For classes certified under FRCP 23(b)(3), the court must direct to class members "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice must clearly and concisely state in plain, easily understood language:

> **(i)** the nature of the action;
> **(ii)** the definition of the class certified;
> **(iii)** the class claims, issues, or defenses;
> **(iv)** that a class member may enter an appearance through an attorney if the member so desires;
> **(v)** that the court will exclude from the class any member who requests exclusion;
> **(vi)** the time and manner for requesting exclusion; and
> **(vii)** the binding effect of a class judgment on members under Rule 23(c)(3).

FRCP 23(c)(2)(B).

Here, the Notice of Class Action Settlement clearly lays out for the reader what the case is about, the class definition and what the Proposed Settlement is (including the Maximum Settlement Amount, the proposed Enhancement Awards for the Class Representatives, as well as the attorney fees and costs). (ECF No. 40-1 at 37–43.) Furthermore, the Notice states what options an individual has, including automatically receiving the Settlement, requesting exclusion from the Settlement, or objecting to the Settlement. (ECF No. 40-1 at 41–42.) The Notice also provides the addresses and phone numbers of Class Counsel. (ECF No. 40-1 at 42–43.) The Court is satisfied that the requirements of FRCP 23(c)(2)(B) are met.

As for the method of notice, the Parties have agreed to use a Third Party Administrator to handle the administration procedures. (ECF No. 40-1 at 9.) California authority generally requires service of class notice by mail or similar reliable means. *See Chance v. Superior Court*, 58 Cal. 2d 275, 290 (1962). The procedure must be reasonably certain to reach class members. *Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306, 319 (1950). Here, the Third Party Administrator will send a completed Court-approved Notice Packet to each Eligible Class Member via first class U.S. mail or its equivalent. (ECF No. 40-1 at 20.) Prior to mailing the Notice Packet, the Third Party Administrator shall check the last known address of each Eligible

Class Member by checking the last known address against the National Change of Address database. (ECF No. 40-1 at 20.) If a Notice Packet is returned because of an undeliverable address, the Third Party Administrator shall conduct a skip trace to locate a correct address. (ECF No. 40-1 at 20.) Sprint shall provide all information regarding Eligible Class Members necessary to conduct these mailings and searches that is reasonably-available from Sprint's records, including Eligible Class Members' last known addresses. One supplemental Notice Packet will be mailed to each Eligible Class Member whose notice is returned to the Third Party Administrator within twenty (20) days of the initial mailing of the Notice Packets by the Third Party Administrator. (ECF No. 40-1 at 21.) The Court finds this method of notice to be reasonable and therefore approves the notice program.

**VII.    CONCLUSION**

For all the reasons set forth above, the Court orders as follows:

1. The action is preliminarily certified as a class action, for purposes of Settlement only, on behalf of all persons who are or who have been employed by Sprint as a non-exempt employee in one of Sprint's California retail stores during the Class Period as a Store Host, Retail Consultant, Bilingual Retail Consultant, Lead Retail Consultant, Bilingual Lead Retail Consultant, Assistant Store Manager, Bilingual Assistant Store Manager, and/or Manager Retail Store (C) (the "Settlement Class"), except for any person who is a named plaintiff or who has filed a consent to join in the collective action conditionally certified in the action entitled *Guilbaud, et al. v. Sprint Nextel Corp and Sprint/United Management Co., Inc*., No. 3:13-cv-04357-VC (N.D. Cal.).

2. With respect to the Settlement Class, the Court finds, solely for purposes of the Settlement, and with no other effect on this litigation or any other proceeding, including if the Settlement Agreement ultimately is not approved or final judgment is not entered, that the proposed class meets the requirements for certification under FRCP Rule 23.

3. The Class Action Settlement set forth in the Settlement Agreement is preliminarily approved as it appears to be fundamentally fair, adequate and within the "range of

reasonableness," subject to any objections that may be raised at the Final Fairness and Approval Hearing.

4. For purposes of the Proposed Settlement only, the Court hereby preliminarily approves Quintilone & Associates, The Carter Law Firm, and the Phelps Law Group as Class Counsel for the Settlement Class.

5. For purposes of the Proposed Settlement only, Plaintiffs Viet Bui and Christina Avalos-Reyes are hereby preliminarily approved as Class Representatives for the Settlement Class.

6. For purposes of the Proposed Settlement only, the Court hereby preliminarily approves Rust Consulting, Inc. as Claims Administrator.

7. The Court approves, as to form and content, the proposed Notice of Class Action Settlement.

8. The Court directs the mailing, by first class mail, of the Notice to the Class Members in accordance with the schedule set forth in the Settlement Agreement.  The Court finds that the method and dates selected for the mailing of these documents meet the requirements of due process, provide the best notice practicable under the circumstances and constitute due and sufficient notice to all persons entitled to notice.

9. Pending the Court's final approval of the Settlement Agreement, all proceedings in this Action, except those related to approval of the Settlement Agreement, are stayed.

10. Members of the Settlement Class who object to the Settlement Agreement are not required to appear at the Fairness Hearing.  However, persons wishing to be heard orally in opposition to the approval of the Settlement Agreement are required to state in their written objection whether they intend to appear at the hearing.  Persons who intend to object to the Settlement Agreement and desire to present evidence at the Fairness Hearing must include in their written objections the identity of any person from whom they may obtain a declaration and exhibits they intend to introduce into evidence at the Fairness Hearing.

11. Plaintiffs shall file their Motion for Attorney's Fees and Litigation Expenses no later than fourteen (14) days before the date established pursuant to Section 5.10.4 of the Settlement Agreement for Class Members to file and deliver written objections to the Settlement.

12. Under no circumstances shall this Order be construed, deemed or used as an admission, concession or declaration by or against Defendants of any fault, wrongdoing, breach or liability in this Action or in any other proceeding.  Nor shall the Order be construed, deemed or used as an admission, concession or declaration by or against Class Representatives or members of the Settlement Class that their claims lack merit or that the relief requested in the instant action is inappropriate, improper or unavailable, or as a waiver by any party of any defenses or claims he, she, or it may have in this Action or in any other proceeding.

13. Neither Defendants nor their counsel shall have any responsibility whatsoever for any application for the Attorney's Fees and Expense Award or Representative Plaintiffs Enhancement Awards submitted by Class Counsel, except that Defendants agree not to oppose the requested fees and costs and Representative Enhancement Awards.

14. Pursuant to the Parties' agreement, no discovery regarding the Settlement or Settlement Agreement shall be permitted as to any party to the Settlement Agreement other than as may be directed by the Court upon a proper showing by the person seeking such discovery pursuant to a motion properly noticed and served.

15. Should the Settlement Agreement not be finally approved, or should the Effective Date, as that term is defined in the Settlement Agreement, not occur, this Order shall be null and void and of no further force and effect, and the Parties shall be restored to their respective positions prior to the execution of the Settlement Agreement.  Upon such nullification, neither this Order nor the Settlement Agreement shall be used or referred to for any purpose in this Action or in any other proceeding, and the Settlement Agreement and all negotiations thereto shall be inadmissible.

16. Parties are hereby ordered to meet and confer as to possible dates for the final fairness hearing and file with the Court a proposed date within 30 days of the entry of this Order.  Upon the Court's approval of such date, the Parties will submit an updated Notice of Class Action Settlement to the Court for final approval.  With submission of the Notice of Class Action Settlement the Parties will file an updated Implementation Schedule for all other applicable further proceedings, including Motions for Attorney's Fees.

17. Plaintiffs shall file a Motion for Final Approval, and the Parties may file supplemental briefs regarding proof of mailing, objections, and any related or outstanding issues, no later fourteen (14) days prior to the Final Fairness and Approval Hearing.

18. The Court orders the Parties to file briefings on whether the Parties provided notice to the Attorney General pursuant to 28 U.S.C.A. §1715.

**IT IS SO ORDERED.**

Dated: February 23, 2016

Troy L. Nunley
United States District Judge